CITIZENS FOR COMMON SENSE IN GOVERNMENT v
ATTORNEY GENERAL

Docket No. 228936. Submitted September 6, 2000, at Detroit. Decided
October 20, 2000, at 9:05 A.M.

Citizens for Common Sense in Government, a ballot question commit-
tee that opposes a ballot proposal sponsored by Let Local Votes
Count, brought an action in the Ingham Circuit Court against the
Attorney General and the Secretary of State, seeking a declaration
that a 1981 opinion of the Attorney General, OAG, 1981-1982, No
5882, p 137 (April 22, 1981), does not accurately state the law and
that the Secretary of State is not bound by, and may not follow,
that opinion. The plaintiff opposed the ballot proposal that would
amend the Michigan Constitution to require a two-thirds vote of the
Legislature with respect to any legislative action that intervenes in
matters of municipal concern. The Michigan Municipal League
(MML), a private nonprofit corporation established to advise and
lobby for cities and villages in Michigan and which is funded
largely from fees assessed against its member cities and villages,
allegedly has expended funds to support the ballot proposal. The
plaintiff contended that the financial support by the MML for the bal-
lot proposal violated § 57 of the Michigan Campaign Finance Act
(MCFA), 1995 PA 264, § 57, MCL 169.257; MSA 4.1703(57), which pro-
hibits cities and municipalities from expending funds to support or
oppose a ballot question. The plaintiff contended that it had not
sought administrative redress under the MCFA or the Administrative
Procedures Act (APA), MCL 24.201 *et seq.*: MSA 3.560(101) *et seq.*,
because the Secretary of State would not have enforced the prohi-
bition contained in § 57, but rather would have followed the con-
clusion found in OAG No 5882, which concluded that the MML may,
subject to the requirements of the MCFA, expend funds in connec-
tion with the passage or defeat of a ballot proposal. The parties
filed cross-motions for summary disposition. The court, Lawrence
M. Glazer, J., granted summary disposition for the defendants,
holding that the MCFA did not create a private right of action, that
the plaintiff had administrative remedies available that it had not
pursued, and that, because the plaintiff's action was based on spec-
ulation concerning how the Secretary of State would rule, there

was no actual controversy on which the court could properly act. The plaintiff appealed.

The Court of Appeals *held*:

1. Section 15 of the MCFA, MCL 169.215; MSA 4.1703(15), provides that no private right of action arises pursuant to the act, that the remedies provided in the act are the exclusive means of enforcing the provisions of the act, and that the Secretary of State is directed to promulgate rules and issue declaratory rulings to implement the MCFA pursuant to the APA. The APA provides that an agency may issue declaratory rulings concerning the applicability of statutes, rules, and orders of the agency. Accordingly, pursuant to the APA, the plaintiff could have requested a declaratory ruling from the Secretary of State regarding § 57 of MCFA. If the Secretary of State had refused to issue such a ruling, the plaintiff could have then sought a declaratory judgment in the circuit court pursuant to the provisions of the APA. If the Secretary of State had issued a ruling that was adverse to the plaintiff's understanding of the law, the plaintiff could have sought judicial review of the ruling pursuant to the review provisions of the APA.

2. The plaintiff argues that it was not required to exhaust its administrative remedies under the MCFA because such efforts would be futile since the Secretary of State is required to follow OAG No 5882. However, courts should not presume futility in the administrative process. Indeed, the premise for the plaintiff's futility argument rests on the presumptions that the Secretary of State would blindly apply the conclusion reached in the 1981 opinion of the Attorney General rendered before the amendment of the MCFA by the addition of § 57 without seeking further guidance from the Attorney General and that the Attorney General would continue to adhere to the conclusion expressed in the 1981 opinion in spite of the Legislature's enactment of § 57. Such presumptions are improper, and the plaintiff had an adequate administrative remedy that should have been pursued before seeking judicial relief. Accordingly, the judiciary lacks jurisdiction over the plaintiff's cause of action.

3. Because the plaintiff's claim is based not on actual harm but rather on speculation concerning how the Secretary of State might act if called to do so, there is no actual controversy, and the circuit court lacked jurisdiction to grant the plaintiff's requested declaratory relief.

Affirmed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE REMEDIES — DECLARATORY RULINGS — EXHAUSTION OF ADMINISTRATIVE REMEDIES — JUDICIAL RELIEF.

   A party is not excused on the basis of futility from seeking a declaratory ruling from the Secretary of State concerning the applicability of a provision of the Michigan Campaign Finance Act before seeking judicial relief where the alleged futility arises from a presumption that the Secretary of State will automatically adhere to the conclusion expressed by the Attorney General in an opinion rendered before the enactment of the provision at issue; courts may not engage in such presumptions and should not interfere with the administrative process by entertaining original actions for declaratory relief under such circumstances (MCL 24.201 *et seq.*, 169.201 *et seq.*; MSA 3.560[101] *et seq.*, 4.1703[1] *et seq.*).

2. COURTS — JURISDICTION — CASE AND CONTROVERSY — ACTUAL CONTROVERSY — SPECULATION.

   A court lacks jurisdiction to issue a declaratory judgment where there is no actual controversy; mere speculation concerning how an administrative body may rule does not create an actual controversy.

*Honigman Miller Schwartz & Cohn* (by *John D. Pirich* and *Timothy Sawyer Knowlton*), for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon* and *Stephen M. Geskey*, Assistant Attorneys General, for the defendants.

Before: CAVANAGH, P.J., and SAAD and METER, J.

SAAD, J.

I

NATURE OF THE CASE

Plaintiff, Citizens for Common Sense in Government, is a ballot question committee that opposes a ballot proposal sponsored by Let Local Votes Count (LLVC). The Michigan Municipal League (MML) is a pri-

vate nonprofit corporation established to advise and lobby for cities and villages in Michigan[1] The MML funds its activities largely from fees assessed against its member cities and villages.[2] The MML allegedly supports and has expended funds to support the LLVC's ballot proposal[3] regarding legislation that affects local governments.

Section 57 of the Michigan Campaign Finance Act (MCFA), MCL 169.257; MSA 4.1703(57), prohibits public bodies, such as the MML's membership, from directly spending money to influence a ballot proposal. Plaintiff contends that the MML expenditures to influence this ballot proposal, which plaintiff claims comes in part from money donated by public bodies, provides the vehicle for cities to do indirectly that which § 57 prohibits them from doing directly.

Fourteen years before the Legislature passed § 57, the Attorney General issued an opinion that the MML did not violate state law by spending funds to influence a ballot proposal.[4] Plaintiff says that the MML's conduct violates § 57, but opines that because of OAG, 1981-1982, No 5882, p 137 (April 22, 1981), the Secretary of State will not enforce the "law" against

---

[1] See *Hays v Kalamazoo*, 316 Mich 443, 449-450; 25 NW2d 787 (1947).

[2] The MML is funded by membership dues and receives some revenues from the sale of publications and special services. *About the* MML, retrieved October 4, 2000, from the World Wide Web: http://www.mml.org/geninfo/aboutmml.htm.

[3] The ballot proposal seeks a constitutional amendment that would require a two-thirds vote of the Legislature on any measure it passes after March 1, 2000, that "intervenes" in areas of "municipal concern."

[4] "[T]he Michigan Municipal League, as a nonprofit corporation, may, subject to the requirements of 1976 PA 388, *supra*, expend funds of the corporation in connection with the passage or defeat of a ballot question." OAG, 1981-1982, No 5882, p 137, 139 (April 22, 1981).

the MML because the Secretary of State must abide by the Attorney General's 1981 erroneous opinion.

We will not address the merits of what plaintiff regards as the ultimate issue (Does the MML's expenditures violate § 57's prohibitions against municipalities expending public funds to influence ballot proposals?), because this Court lacks jurisdiction to decide this issue under the present circumstances.

This Court lacks jurisdiction because (1) the MCFA provides the exclusive procedure for enforcement of its provisions through the Secretary of State and until these avenues are tried and exhausted, this Court has no jurisdiction and (2) under Michigan law, there is no case or controversy, but only mere speculation by plaintiff that the Secretary of State will automatically defer to the 1981 opinion of the Attorney General. Under the MCFA and the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, plaintiff, and this Court, must give the Secretary of State an opportunity to interpret and enforce § 57, and this Court must resist plaintiff's invitation to presume how the Secretary of State or the Attorney General may opine or act in light of § 57.

II

FACTS AND PROCEEDINGS

Plaintiff is a ballot question committee that opposes a ballot proposal to amend the Michigan Constitution to require a two-thirds vote of the Legislature on any legislative action that "intervenes" in

areas of "municipal concern."[5] The MML, which is not a party to this action, is a nonprofit corporation whose membership consists of cities and villages.[6] The MML's purpose, in part, is to encourage legislation beneficial to the municipalities of Michigan. The MML funds its activities primarily with dues that are assessed on the basis of the population of each member city and village.[7] The MML supports the ballot proposal and, according to plaintiff, has illegally expended funds to that end.

In 1981, the Attorney General issued an opinion, OAG No 5882, in which the Attorney General concluded that the MML may, subject to the requirements of the MCFA, expend funds in connection with the passage or defeat of a ballot proposal. After the release of that opinion, the Legislature amended the MCFA, 1976 PA 388, by adding § 57, which expressly barred the use of public funds for campaign contributions.[8] 1995 PA 264, § 57, as amended by 1996 PA 590, MCL 169.257; MSA 4.1703(57). Section 57 in relevant part

---

[5] The ballot proposal is sponsored by a ballot question committee called "Let Local Votes Count."

[6] The MML is the Michigan association of cities and villages. Currently, more than five hundred cities and villages are members, representing approximately ninety-eight percent of Michigan's urban population. Membership is voluntary. The MML provides a variety of services to its members, including maintaining a reference library, sponsoring conferences and training programs, offering consulting, personnel and labor relations services, administering insurance programs, producing numerous publications, and promoting state and federal legislation helpful to local governments. As noted, the MML is supported by membership dues and receives some revenues from the sale of publications and special services. *About the MML, supra.*

[7] *About the MML, supra.*

[8] The legislative history of the act shows that the act was intended to prohibit campaign contributions by a public body, to define "public body," and to outline penalties for violation of the act. House Legislative Analysis, HB 5410, November 30, 1995.

prohibits cities and municipalities from expending funds to support or oppose a ballot question.

Plaintiff contends that the MML's expenditure of funds violates § 57 of the act because cities pay dues to the MML and the MML expends some of its funds to support the ballot issue in contention.[9] Plaintiff also asserts that because state agencies are required to follow Attorney General opinions, the Secretary of State will follow OAG No 5882 and will not enforce § 57 against the MML. Rather than seek redress under the MCFA or pursuant to the APA, plaintiff filed in the circuit court an action seeking a declaratory ruling that "1981 OAG 5882 does not accurately state the law and that the Secretary of State is not bound by, and may not follow, this opinion."

The parties filed cross-motions for summary disposition.[10] The circuit court granted defendants' motion, ruling (1) that the MCFA did not create a private right of action, (2) that plaintiff had administrative remedies available that had not been pursued, and (3) that because plaintiff's action was based on speculation concerning how the Secretary of State would rule, there was no actual controversy on which the court could properly pass. The court denied plaintiff's motion for summary disposition.

III

STANDARD OF REVIEW

Whether the trial court has subject-matter jurisdiction is a question of law that this Court reviews de

---

[9] LLVC is a ballot question committee that has sponsored the ballot proposal for an amendment of the Michigan Constitution requiring a two-thirds vote on any bill that would intervene in areas of municipal concern.

[10] Defendants sought summary disposition under MCR 2.116(C)(4) and (C)(8). Plaintiff sought summary disposition under MCR 2.116(C)(9).

novo. *Rudolph Steiner School of Ann Arbor v Ann Arbor Charter Twp*, 237 Mich App 721, 730; 605 NW2d 18 (1999); *W A Foote Memorial Hosp v Dep't of Public Health*, 210 Mich App 516, 522; 534 NW2d 206 (1995). Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to exhaust its administrative remedies. *Blair v Checker Cab Co*, 219 Mich App 667, 671; 558 NW2d 439 (1996).

The burden of establishing jurisdiction is on the plaintiff. *Universal Am-Can Ltd v Attorney General*, 197 Mich App 34, 37; 494 NW2d 787 (1992); *Gooley v Jefferson Beach Marina, Inc*, 177 Mich App 26, 28; 441 NW2d 21 (1989). The circuit courts of this state have subject-matter jurisdiction to issue declaratory rulings, injunctions, or writs of mandamus. Const 1963, art 6, § 13; MCL 600.605; MSA 27A.605; *Universal Am-Can, supra*. However, if the Legislature has expressed an intent to make an administrative tribunal's jurisdiction exclusive, then the circuit court cannot exercise jurisdiction over those same areas. MCL 600.605; MSA 27A.605; *Universal Am-Can, supra*.

IV

ANALYSIS

This Court lacks jurisdiction because (1) plaintiff failed to exhaust the exclusive administrative remedies of the MCFA and (2) under Michigan law, there is no case or controversy.

A

EXHAUSTION OF REMEDIES

This Court lacks jurisdiction because plaintiff failed to exhaust its administrative remedies. Subsection 15(9) of the MCFA provides as follows:

> There is no private right of action, either in law or in
> equity, pursuant to this act. The remedies provided in this
> act are the exclusive means by which this act may be
> enforced and by which any harm resulting from a violation
> of this act may be redressed. [MCL 169.215(9); MSA
> 4.1703(15)(9).]

The Legislature has directed the Secretary of State to promulgate rules and issue declaratory rulings to implement the MCFA pursuant to the APA. MCL 169.215(1)(e); MSA 4.1703(15)(1)(e). The APA provides a formal procedure for submitting requests for declaratory rulings and governing treatment of any such requests. *Greenbriar Convalescent Center, Inc v Dep't of Public Health*, 108 Mich App 553, 560; 310 NW2d 812 (1981). Under the APA, an agency may issue declaratory rulings concerning the applicability of statutes, rules, or orders of the agency. MCL 24.263; MSA 3.560(163). Plaintiff could have requested a declaratory ruling regarding § 57, and, if the Secretary of State refused to issue such a ruling, plaintiff could have sought a declaratory judgment in the circuit court. MCL 24.264; MSA 3.560(164). If the plaintiff had sought, and the Secretary of State had issued, a ruling, that ruling would have been subject to judicial review under MCL 24.263; MSA 3.560(163).

Though plaintiff never attempted to comply with the statute,[11] plaintiff argues that it was not required to exhaust the administrative remedies promulgated in the MCFA because to do so would "require a useless effort." Plaintiff argues that seeking such a ruling would be futile because the Secretary of State is

---

[11] Because plaintiff did not seek a declaratory ruling, there was no record for the court to review. Judicial review of an administrative ruling is confined to the record. MCL 24.304(3); MSA 3.560(204)(3).

required to follow OAG No 5882. See *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections*, 199 Mich App 681, 691; 503 NW2d 465 (1993) (an opinion of the Attorney General is binding on state agencies and officers). However, as this Court has noted, "courts should not presume futility in an administrative appeal but should assume " 'that the administrative process will, if given a chance, discover and correct its own errors." ' " *Greenbriar, supra* at 562, quoting *Canonsburg General Hosp v Dep't of Health*, 492 Pa 68, 74; 422 A2d 141 (1980).

Our Supreme Court has stated that "administrative law dictates that courts move very cautiously when called upon to interfere with the assumption of jurisdiction by an administrative agency." *Judges of the 74th Judicial Dist v Bay Co*, 385 Mich 710, 727; 190 NW2d 219 (1971). This restraint is due, for the most part, because of the separation of powers. *Id.* From this, and other considerations, "emanates the doctrine of exhaustion, by which courts have declined to act in contravention of administrative agencies where the remedies available through administrative channels have not been pursued to completion." *Id.* at 728.

A discussion of the purpose of the doctrine of exhaustion of administrative remedies, and the "futility" exception thereto, is found in *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 610; 255 NW2d 702 (1977):

> Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical compe-

tence of the agency or may have been entrusted by the Leg-
islature to the agency's discretion; and (4) a successful
agency settlement of the dispute may render a judicial reso-
lution unnecessary. See *Judges of the 74th Judicial District
v Bay Co*, 385 Mich 710, 727-728; 190 NW2d 219 (1971).

Exhaustion of administrative remedies is not an inflexible
condition precedent to judicial consideration, however, and
will not be required if review of the agency's final decision
would not provide an adequate remedy, MCL 24.301; MSA
3.560(201), i.e., if it would run counter to the policies which
underlie the doctrine.

According to plaintiff, it would have been futile to
pursue administrative remedies here because the Sec-
retary of State would have followed OAG No 5822
and would have ruled that the MML's activities do not
violate the MCFA. The flaw in plaintiff's reasoning is
that this argument presumes that the Secretary of
State would not have sought further guidance from
the Attorney General in light of the amendment of the
MCFA, specifically the adding of § 57, and further
assumes that the Attorney General would have ren-
dered a new opinion that was consistent with the
1981 opinion. These assumptions by plaintiff presume
too much and underscore why Michigan law requires
exhaustion of administrative remedies. Like the cir-
cuit court, we find nothing in plaintiff's complaint
that would indicate that the Secretary of State would
not have sought guidance from the Attorney General
or that the Attorney General would not have been
willing to render an updated opinion to address the
effects of the amendments of the MCFA.[12]

Clearly, plaintiff has an adequate remedy, because
it could have sought a declaratory ruling from the

---

[12] By saying this, we do not mean to imply any opinion concerning the
issue whether OAG No 5822 remains valid after the passage of § 57.

Secretary of State. Its sole argument is based on its speculation concerning what the outcome of that remedy would have been. " '[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Holman v Industrial Stamping & Mfg Co*, 344 Mich 235, 260; 74 NW2d 322 (1955), quoting *Myers v Bethlehem Shipbuilding Corp*, 303 US 41, 50; 58 S Ct 459; 82 L Ed 638 (1938).

Because § 15 of the MCFA, and the APA, set forth an administrative remedy procedure subject to judicial review, we conclude that plaintiff is required to exhaust its administrative remedies under the MCFA and the APA before filing suit in the circuit court. Absent a request for a declaratory ruling that results either in a denial of the request or a declaratory ruling binding on the parties, the judiciary lacks jurisdiction over this cause. *Michigan State Chamber of Commerce v Secretary of State*, 122 Mich App 611, 616; 332 NW2d 547 (1983).

B

CASE OR CONTROVERSY

MCR 2.605(A) empowers the circuit court to issue a declaratory judgment in "a case of actual controversy."[13] "[T]he existence of an 'actual controversy' is

---

[13] MCR 2.605 provides, in relevant part:

(A) Power to Enter Declaratory Judgment

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an

condition precedent to invocation of declaratory relief." *Kuhn v East Detroit,* 50 Mich App 502, 504; 213 NW2d 599 (1973). This Court lacks jurisdiction because there is no case of actual controversy.

Generally, an actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. *Shavers v Attorney General,* 402 Mich 554, 588-589; 267 NW2d 72 (1978); *Durant v Michigan (On Remand),* 238 Mich App 185, 204-205; 605 NW2d 66 (1999). "[W]hat is essential to an 'actual controversy' under the declaratory judgment rule is that plaintiff plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Shavers, supra* at 589; *Fieger v Comm'r of Ins,* 174 Mich App 467, 470-471; 437 NW2d 271 (1988). Generally, where the injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist. *Recall Blanchard Comm v Secretary of State,* 146 Mich App 117, 121; 380 NW2d 71 (1985).

Here, plaintiff's claim is based not on actual harm, but on its speculation concerning how the Secretary of State would have acted if called on to do so. Until the Secretary of State issues a ruling regarding the MML's use of funds to support the LLVC ballot proposal, there is no actual controversy.

Because there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment.[14] *McGill v Automobile Ass'n of Michigan,* 207 Mich

---

action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

[14] In light of our holding regarding lack of jurisdiction, we need not address other issues raised by the parties.

App 402, 407; 526 NW2d 12 (1994); *Recall Blanchard,*
*supra* at 122-123.

Affirmed.